Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HELLMANN WORLDWIDE LOGISTICS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> BRUCE HARRIS, PHILIP MCINERNY, HALLIE ANGEL, AND PACNOR TRANSPORTATION, LLC, <br><br> Defendants. | Case No. C09 – 0738 TSZ <br><br> DEFENDANT BRUCE HARRIS' REPLY IN SUPPORT OF SECOND MOTION TO DISMISS PLAINTIFF'S RICO AND STATE LAW CLAIMS <br><br> NOTE ON MOTION CALENDAR:  Friday, October 30, 2009 |

## I.    **INTRODUCTION**

Hellmann yet again seeks to avoid the specificity requirements of Fed. R. Civ. P. 9(b) in an effort to dress up a roughly $60,000.00 dispute with a former employee as a RICO claim (and ostensibly meet the jurisdictional threshold of this Court).  This time it argues that it has satisfied the particularity requirements of Rule 9(b) by summarily alleging that several invoices Mr. Harris and the other defendants issued for payment reflect services that simply "were never performed."  It reasons that it is up to Mr. Harris to discover what services "were never performed."  But this is precisely the circumstances the particularity requirements of Rule 9(b) are designed to prevent.

In effect, Hellmann has fallen back on the argument it unsuccessfully asserted in response to Mr. Harris' first Motion to Dismiss.  Namely, that it need only aver allegations sufficient to provide

DEFENDANT BRUCE HARRIS' REPLY IN SUPPORT OF SECOND MOTION TO DISMISS PLAINTIFF'S RICO AND STATE LAW CLAIMS -1

**CORNERSTONE LAW GROUP, PLLC**
7525 PIONEER WAY, SUITE 101
GIG HARBOR, WASHINGTON 98335
TEL: (253) 858-6100   FAX: (206) 260-2994

Mr. Harris "adequate notice" of its claims as required under Rule 8(a).  Again, this reasoning effectively eviscerates the very purpose of Rule 9(a)'s requirement that a plaintiff plead with particularity the circumstances constituting alleged fraud and has been thoroughly rejected by the Ninth Circuit.  Hellmann has failed to comply with Rule 9(a)'s specificity requirements.

But amidst the clever legal arguments, the parties have lost the forest for the trees.  This is simply not a case that RICO and its severe penalties are intended to address.  As it relates to Mr. Harris, it is a simple case of an employer suing its former employee for allegedly dipping his hand in till and making off with a couple of relatively insignificant items of equipment.  Notwithstanding the fact that it has failed to meet RICO's exacting legal standards, Hellmann should not be permitted to squeeze this case into the luxurious coat of RICO.

Hellmann can and should be pursuing relief in state court pursuant to its state law claims.  Mr. Harris therefore respectfully requests that Hellmann's RICO and fraud claims be dismissed, and that this Court refuse to exercise supplemental jurisdiction over Hellmann's remaining state law claims.

## II.   ARGUMENT

### A.   This is Not a Case Congress Intended to Target with RICO.

As it relates to Mr. Harris, this is a simple case of an employer alleging that its former employee stole approximately $60,000.00 of the employer's money and, apparently, "a pressure washer and a painter".[1]  It is not a case that RICO and its severe penalties were designed to target.

Congress enacted RICO to address the problem of organized crime in America[2] and "intended to combat organized crime, not to provide a federal cause of action and treble damages to every tort plaintiff."[3]  As one court noted:

> In considering RICO claims, courts must attempt to achieve results "consistent with Congress's goal of protecting legitimate business from infiltration by organized crime."  To that end, courts must ensure that RICO's severe penalties are limited to

---

[1] First Amended Complaint, Docket #23, at p. 20, ¶22, ¶25.

[2] Congress enacted RICO as part the Organized Crime Control Act of 1970.  *See* Pub. L. 91-452, 84 Stat. 922.

[3] *Oscar v. University Students Coop Ass'n*, 965 F.2d 783, 786 (9th Cir. 1992).

DEFENDANT BRUCE HARRIS' REPLY IN SUPPORT OF SECOND MOTION TO DISMISS PLAINTIFF'S RICO AND STATE LAW CLAIMS -2

**CORNERSTONE LAW GROUP, PLLC**
7525 PIONEER WAY, SUITE 101
GIG HARBOR, WASHINGTON 98335
TEL: (253) 858-6100   FAX: (206) 260-2994

enterprises consisting of more than simple conspiracies to perpetrate acts of racketeering. Thus, <u>courts must be weary of the putative RICO case that is really "nothing more than an ordinary fraud case clothed in the Emperor's trendy garb."</u>[4]

Courts are particularly "weary" of civil RICO claims based on mail and wire fraud – the bases for Hellmann's RICO claims against Harris. Courts scrutinize RICO cases predicated on mail and wire fraud "because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it."[5]

Even if taken as true (which it is not), Hellmann's description of the simple conspiracy allegedly perpetrated by Mr. Harris and the other defendants is not of the kind RICO was intended to protect against. Dismissal of Hellmann's RICO claims is warranted for this reason alone. At a minimum, the Court must ensure that this case falls squarely within RICO's exacting standards before potentially subjecting Mr. Harris to the statute's severe penalties.[6] And as demonstrated by Hellmann's pained and ultimately unsuccessful attempt to shoehorn its allegations into the specificity requirements of Rule 9(b) (which is addressed in more detail below), this case falls woefully short of that target.

Although claims of employee theft must never be taken lightly, this is not a RICO case. To the extent that Hellmann is entitled to relief, it can and should be pursuing that relief in state court. Without its RICO claim, Hellmann is not left without a remedy.[7] Mr. Harris therefore respectfully requests that the Court dismiss Hellmann's RICO claims with prejudice.

---

[4] *New York Auto. Ins. Plan v. All Purpose Agency & Brokerage, Inc.*, 1998 WL 695869 at *4 (S.D.N.Y. 1998) (emphasis added) (citations omitted); *see also Katzman v. Victoria's Secret Catalogue,* 167 F.R.D. 649, 655 (S.D.N.Y. 1996) ("Civil RICO is an unusually potent weapon – the litigation equivalent of a thermonuclear device.") (quoting *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991)).

[5] *Efron v. Embassy Suites, Inc.*, 223 F.3d 12, 20 (1st Cir. 2000) (affirming dismissal of RICO claim predicated upon alleged wire fraud); *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 549 (4th Cir. 2001) (Courts are "cautions about basing a RICO claim on predicate acts of mail and wire fraud because it will be the unusual fraud that does not enlist the mails and wires in its service at least twice.").

[6] *See New York Auto. Ins. Plan,* 1998 WL 695869 at *4.

[7] In addition to its RICO and state law fraud claims, Hellmann has asserted claims for "Breach of Fiduciary Duty" and "Conversion." First Amended Complaint, Docket #23, Counts II and IV, at pp. 20-21.

DEFENDANT BRUCE HARRIS' REPLY IN SUPPORT OF SECOND MOTION TO DISMISS PLAINTIFF'S RICO AND STATE LAW CLAIMS -3

**CORNERSTONE LAW GROUP, PLLC**
7525 PIONEER WAY, SUITE 101
GIG HARBOR, WASHINGTON 98335
TEL: (253) 858-6100   FAX: (206) 260-2994

B.    **Hellmann's Conclusory Allegations Fail to Comply with Rule 9(b)'s Requirement to Set Forth With Particularity Those Circumstances Which *Constitute* Fraud.**

A plaintiff must satisfy a two prong test to comply with the particularity requirements of Rule 9(b): it must set forth "what is false or misleading about a statement, <u>and</u> why it is false." *In re GlenFed, Inc. Securities Litigation,* 42 F.3d 1541, 1547 (9th Cir. 1994) (emphasis added). Although Hellmann arguably satisfies the first prong, it unquestionably fails to satisfy the second.

Hellmann claims that it has met the first prong by identifying several invoices, and the second prong by alleging that the services reflected on those invoices "were never performed." But simply identifying several invoices does not set forth "what is false or misleading" about them. The most that can be said of this is that Hellmann has alleged neutral facts necessary to identify the transactions in question. But Hellmann has arguably satisfied this first prong by alleging that the services identified in the invoices "were never performed." Conceivably at least, this allegation identifies what is "what is false or misleading" about the invoices. But this conclusory allegation is insufficient to satisfy the second prong of Rule 9(b)'s specificity test. As the Ninth Circuit held in *Moore v. Kayport Package Express,* 885 F.2d 531 (9th Cir. 1989), "mere conclusory allegations of fraud are insufficient." *Id.* at 540. In other words, Hellmann has yet to set forth an explanation as to <u>why</u> the invoices reflect services that "were never performed."

Hellmann attempts to skirt around the second prong of Rule 9(b)'s specificity test by arguing that nothing more can be said about "how" the services reflected in the subject invoices were not performed other than to summarily allege that they simply "were never performed." This is absurd. Hellmann alleges in its First Amended Complaint that the invoices reflect "trucking, crating and offloading services."[8] Certainly Hellmann could identify which of these services were not performed. Were products not picked up? Were they not crated? Did they not arrive at the intended destination? By simply alleging that services "were not performed," Hellmann leaves Mr. Harris to guess what services were allegedly not performed, and to generally deny that he did anything wrong.

---

[8] *See, e.g.,* First Amended Complaint, Docket #23, at p. 3, ¶9.1.

DEFENDANT BRUCE HARRIS' REPLY IN
SUPPORT OF SECOND MOTION TO DISMISS
PLAINTIFF'S RICO AND STATE LAW
CLAIMS -4

**CORNERSTONE LAW GROUP, PLLC**
7525 PIONEER WAY, SUITE 101
GIG HARBOR, WASHINGTON 98335
TEL: (253) 858-6100   FAX: (206) 260-2994

This is precisely what the specificity requirements of Rule 9(b) are designed to prevent. *Semegen v. Weidner,* 780 F.2d 727, 731 (9th Cir. 1986).

Surprisingly, Hellmann proves the spuriousness of its own argument by admitting that it can in fact set forth the circumstances of precisely how the services reflected in the subject invoices were not performed.[9] It is these circumstances that the particularity requirements of Rule 9(b) require a plaintiff to set forth. But Hellmann argues that it is Mr. Harris' burden to discover these circumstances through discovery. This is clearly contrary the specificity requirements of Rule 9(b), not to mention the important policy considerations underlying the rule – Hellmann cannot push the burden of discovering the basis of its RICO and fraud claims upon Mr. Harris. *See Semegen,* 780 F.2d at 731 (Rule 9(b) is designed to "prohibit a plaintiff from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.").

More likely, Hellmann has no factual basis for its conclusory allegations and hopes to obtain it through discovery. In light of this and Mr. Harris' previous motion to dismiss, it defies reason that Hellmann would withhold these facts if they indeed know them.[10] Despite Hellmann's arguments to the contrary, this case is a fishing expedition. And Rule 9(b) prevents the filing of complaints as pretext for discovery of unknown wrongs and protects the reputations of potential defendants from the damage resulting from being accused of fraudulent acts. *Id.*

Hellmann's attempt to characterize this Motion as an effort to engage in a trial on the pleadings or otherwise "test the evidence" is a red hearing. Under Rule 9(b), Hellmann is required to "set forth an explanation as to why the statement or omission complained of was false or misleading." *GlenFed,* 42 F.3d at 1549 (emphasis added). The question therefore is not how Hellmann knows the facts providing the basis for its allegations. The question is whether Hellmann has plead sufficient

---

[9] Opposition to Second Motion to Dismiss, Docket #29, at p. 10, fn. 3. Notably, Hellmann does not request leave to amend its First Amended Complaint to add these supposed facts. No such relief should therefore be granted.

[10] Hellmann's statement that it is withholding these facts in an effort to avoid providing the defendants with a "windfall of information" is hardly worth addressing. *See* Opposition, Docket #29, at p. 10, fn 4. These facts would be revealed almost immediately through appropriate disclosures. No "windfall" is possible. In any event, it is precisely these facts that Rule 9(b) requires be disclosed at the pleading stage.

DEFENDANT BRUCE HARRIS' REPLY IN
SUPPORT OF SECOND MOTION TO DISMISS
PLAINTIFF'S RICO AND STATE LAW
CLAIMS -5

**CORNERSTONE LAW GROUP, PLLC**
7525 PIONEER WAY, SUITE 101
GIG HARBOR, WASHINGTON 98335
TEL: (253) 858-6100   FAX: (206) 260-2994

facts to satisfy the specificity requirements of Rule 9(b).  As detailed herein, it has not.

Moreover, the suggestion that Hellmann need only allege that the various services described in the subject invoices "were never performed" is nothing more than a recycling of Hellmann's previously unsuccessful argument that it need only provide Mr. Harris with sufficient notice of its claims as required under Rule 8(a).  *See Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957) (Rule 8(a) requires a statement "that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests").  As Mr. Harris successfully demonstrated in its Reply in support of its first Motion to Dismiss[11], the Ninth Circuit has rejected this argument.  *See In re GlenFed, Inc. Securities Litigation,* 42 F.3d 1541, 1547 (9th Cir. 1994).

Finally, Hellmann attempts to draw a parallel between this case and the hypothetical of the "house built on landfill" that the Ninth Circuit articulated in *In re GlenFed,* 42 F.3d at 1548.  This case is distinguishable.  Unlike a house built on landfill, which is indeed a true fact patently observable in the real world, an invoice reflecting services demonstrates nothing about the legitimacy of the services it reflects.  Particularly because the invoices at issue in this case reflect several different types of services (Hellmann alleges "trucking, crating and offloading services" in its First Amended Complaint), simply alleging that services relating to not one, but twenty invoices "were never performed" is wholly conclusory and insufficient to meet the particularity requirements of Rule 9(b).  *See Moore,* 885 F.2d at 540 ("[M]ere conclusory allegations of fraud are insufficient.").

Unlike an allegation that a house was built on landfill where a defendant would know precisely the circumstances of the alleged fraud, here Mr. Harris has no way of knowing what services reflected in the subject invoices were not performed.  Moreover, Hellmann's allegation that the services reflected on the subject invoices "were never performed" is not the only thing Hellmann alleges is fraudulent about the invoices.  Hellmann also alleges in its First Amended Complaint that the defendants charged Hellmann for services "for an inflated amount even if these services were

---

[11] *See* Defendant Bruce Harris' Reply in Support of Motion to Dismiss Plaintiff's RICO and State Law Claims, pp. 2-4, Docket #17, by this reference incorporated herein.

DEFENDANT BRUCE HARRIS' REPLY IN SUPPORT OF SECOND MOTION TO DISMISS PLAINTIFF'S RICO AND STATE LAW CLAIMS -6

**CORNERSTONE LAW GROUP, PLLC**
7525 PIONEER WAY, SUITE 101
GIG HARBOR, WASHINGTON 98335
TEL: (253) 858-6100   FAX: (206) 260-2994

performed." First Amended Complaint, Docket #23, p. 3 at ¶9.  And it does so without specifying the invoices to which this allegation is intended to apply.  Again, absent a specific explanation of the circumstances of the alleged fraud as required under Rule 9(b), Mr. Harris is left to guess just what he did wrong.  Thus at this stage, he can only generally deny he did anything wrong.  Rule 9(b) is intended to obviate this circumstance.  *Semegen,* 780 F.2d at 731.

## IV.    CONCLUSION

For the reasons stated herein, the Court should dismiss Hellmann's RICO and state law fraud claims against defendant Bruce Harris with prejudice and decline to exercise its supplemental jurisdiction over Hellmann's remaining state law claims.

DATED this 30th day of October, 2009.

CORNERSTONE LAW GROUP, PLLC


By _____/s/ Michael M.K. Hemphill_____
    Michael M.K. Hemphill, WSBA #27340
    Attorneys for Defendant Bruce Harris

DEFENDANT BRUCE HARRIS' REPLY IN SUPPORT OF SECOND MOTION TO DISMISS PLAINTIFF'S RICO AND STATE LAW CLAIMS -7

**CORNERSTONE LAW GROUP, PLLC**
7525 PIONEER WAY, SUITE 101
GIG HARBOR, WASHINGTON 98335
TEL: (253) 858-6100   FAX: (206) 260-2994

Certificate of Service

I certify that on the date noticed below I electronically filed this document entitled DEFENDANT BRUCE HARRIS' REPLY IN SUPPORT OF SECOND MOTION TO DISMISS PLAINTIFF'S RICO AND STATE LAW CLAIMS with the Clerk of the Court using the CM/EMF system which will send notification of such filing to the following persons:

William D. De Voe
wdevoe@hwb-law.com

Olaf Aprans
oaprans@hwb-law.com

Randall T. Thomsen
randallt@dhlt.com

DATED this 30th day of October, 2009, at Seattle, Washington.

   /s/ Michael M.K. Hemphill
Michael M.K. Hemphill

DEFENDANT BRUCE HARRIS' REPLY IN SUPPORT OF SECOND MOTION TO DISMISS PLAINTIFF'S RICO AND STATE LAW CLAIMS -8

**CORNERSTONE LAW GROUP, PLLC**
7525 PIONEER WAY, SUITE 101
GIG HARBOR, WASHINGTON 98335
TEL: (253) 858-6100   FAX: (206) 260-2994