1

2

3

4

5

6

7                           UNITED STATES DISTRICT COURT
                           WESTERN DISTRICT OF WASHINGTON
                                      AT SEATTLE

8

9    HELLMANN WORLDWIDE LOGISTICS,
     INC.,

10                              Plaintiff,                    C09-738Z

11   v.                                                       ORDER

12   BRUCE HARRIS, PHILIP MCINERNY,
     HALLIE ENGEL, AND PACNOR
13   TRANSPORTATION, LLC,

14                              Defendants.

15

16        THIS MATTER comes before the Court on Defendants' Second Motion to Dismiss

17   Plaintiff's RICO and State Law Claims, docket nos. 27 and 28.[1]  Having reviewed all of the

18   papers filed in support of and in opposition to the motion, the Court now DENIES

19   Defendants' Motion to Dismiss and enters the following Order.

20   **BACKGROUND**

21        Plaintiff Hellman Worldwide Logistics, Inc.'s ("Hellmann") First Amended

22   Complaint, docket no. 23, alleges that Defendants Bruce Harris ("Harris"), Phillip McInerny

23   ("McInerny"), and Hallie Engel ("Engel") conspired to steal funds from Hellmann.

24   Hellmann alleges that Harris, McInerny, and Engel formed Pacnor Transportation, LLC

25

26        [1] Defendant Bruce Harris moved to dismiss, docket no. 27.  Defendants Hallie Engel and Pacnor
     Transportation, LLC filed a Notice of Joinder, docket no. 28.

ORDER  - 1

1   ("Pacnor") on August 14, 2008, and from that date to December, 2008, caused Pacnor to

2   submit invoices to Hellmann charging Hellmann for services that Pacnor never performed.

3   First Amended Complaint at ¶¶ 9, 10.  Hellmann employed Harris as its Seattle Branch

4   Manager and McInerny as its Seattle Branch Operations Manager during this period.  Id. at

5   ¶ 7.  Hellmann terminated both employees in December, 2008.  Id. at ¶ 9.

6       Hellmann alleges RICO mail and wire fraud claims arising from Harris, McInerny,

7   Engel, and Pacnor (collectively, the "Enterprise") sending fraudulent invoices by mail during

8   the four month period between August, 2008, and December, 2008.  Id. at ¶¶ 9.1-9.20.

9   Hellmann alleges that the Enterprise "sent, via U.S. Mail, invoices to Hellmann in the name

10  of Pacnor, charging Hellmann for its services that Pacnor never performed, for an inflated

11  amount even if these services were performed, and with the intent to defraud Hellmann of the

12  amounts charged."  Id. at ¶ 9.  The First Amended Complaint sets forth the alleged role of

13  each Defendant in the scheme: Harris approved Pacnor as a vendor knowing that McInerny

14  would approve the allegedly fraudulent invoices, McInerny approved the invoices and mailed

15  checks for payment of those invoices, and Engel received those checks as payment for the

16  allegedly fraudulent invoices she sent.  Id. at ¶ 13.  Hellmann also alleges that Harris, on

17  more than one occasion, "sent emails to Hellmann's offices in Costa Rica in furtherance of

18  the Enterprise's scheme to defraud Hellmann as described above, and with the intent to

19  defraud Hellmann of the amounts charged."  Id. at ¶ 10.

20      Hellmann also alleges three state law claims against Harris: breach of fiduciary duty,

21  fraud, and conversion.  Hellmann alleges that the Enterprise made several false

22  representations of material fact to Hellmann, knowing that those representations were false at

23  the time made, and with the intent to induce Hellmann to remit monies to Pacnor in reliance

24  on those false representations.  Id. at ¶¶ 27-29.

25      The Court has previously dismissed Plaintiff's original Complaint with leave to amend

26  because it failed to allege the circumstances constituting fraud with sufficient particularity to

meet the requirements of Fed. R. Civ. P. 9(b).  <u>See</u> Minute Order, docket no. 16.  Plaintiff has

now filed the First Amended Complaint, docket no. 23.  The First Amended Complaint

provides additional details about exactly which invoices and emails were alleged to have

been fraudulent and when those invoices and emails were sent.  <u>See</u> First Amended

Complaint.  Defendants have now filed their second motion to dismiss.

## DISCUSSION

### A.    Motion to Dismiss

Although a complaint challenged by a Rule 12(b)(6) motion to dismiss need not

provide detailed factual allegations, it must offer "more than labels and conclusions" and

contain more than a "formulaic recitation of the elements of a cause of action."  <u>Bell Atlantic</u>

<u>Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  The complaint must indicate more than mere

speculation of a right to relief.  <u>Id.</u>  When a complaint fails to adequately state a claim, such

deficiency should be "exposed at the point of minimum expenditure of time and money by

the parties and the court."  <u>Id.</u> at 558.  A complaint may be lacking for one of two reasons:

(1) absence of a cognizable legal theory, or (2) insufficient facts under a cognizable legal

claim.  <u>Robertson v. Dean Witter Reynolds, Inc.</u>, 749 F.2d 530, 534 (9th Cir. 1984).  In

ruling on a motion to dismiss, the Court must assume the truth of the plaintiff's allegations

and draw all reasonable inferences in the plaintiff's favor.  <u>Usher v. City of Los Angeles</u>, 828

F.2d 556, 561 (9th Cir. 1987).  The question for the Court is whether the facts in the

complaint sufficiently state a "plausible" ground for relief.  <u>Twombly</u>, 550 U.S. at 570.

Defendants' second motion to dismiss the RICO claim is based on two main

arguments: (1) that the First Amended Complaint still fails to plead fraud with sufficient

particularity to meet the requirements of Fed R. Civ. P. 9(b); and (2) that this is not the type

of case that RICO and its severe penalties were intended to target.  Defendants also move to

dismiss Plaintiff's state law fraud claim for failure to plead fraud with sufficient particularity

1  to meet the requirements of Fed. R. Civ. P. 9(b) and, if the Court dismisses the RICO claim,

2  to decline to exercise supplemental jurisdiction over the state law claims.

3  **B.    Analysis**

4       1.    Requirement of Sufficient Particularity

5       The plaintiff must "state with particularity the circumstances constituting fraud or

6  mistake." Fed. R. Civ. P. 9(b).  This particularity requirement applies to RICO claims

7  predicated on fraud.  See Moore v. Kayport Package Express, Inc., 885 F.2d 531, 541 (9th

8  Cir. 1989).  To satisfy Rule 9(b), "a plaintiff must set forth more than the neutral facts

9  necessary to identify the transaction.  The plaintiff must set forth what is false or misleading

10 about a statement, and why it is false.  In other words, the plaintiff must set forth an

11 explanation as to why the statement or omission complained of was false or misleading."

12 In re GlenFed, Inc. Securities Litigation, 42 F.3d 1541, 1547-48 (9th Cir. 1994).  Moreover,

13 "mere conclusory allegations of fraud are insufficient."  Moore, 885 F.2d at 540.

14      Although Defendants acknowledge that Hellmann's First Amended Complaint

15 sufficiently states the time, place, and content of the alleged misrepresentations, Defendants

16 claim that Hellmann has still failed to adequately allege what is false or misleading about the

17 statements and why they are false.  See Second Motion to Dismiss at 5.  Essentially,

18 Defendants argue that Hellmann must do more than state that the work described in the

19 invoices and emails "was not performed;" Hellmann must also state how it knows that the

20 work was never performed.

21      Defendants' argument is unpersuasive.  Hellmann has set forth why the alleged

22 misrepresentations were false or misleading: because the invoiced work was never

23 performed.  Hellmann cannot be expected to provide additional details about "how" Pacnor

24 did not perform the services stated in the invoices.  Furthermore, Hellmann is not required to

25 provide the evidentiary basis for its claim that the services were never performed at this stage

26

ORDER  - 4

1    of the proceeding.  See In re GlenFed, 42 F.3d at 1550 ("we do not test the evidence at this

2    stage.").

3         Defendants' reliance on securities fraud cases is misplaced.  Defendants cite several

4    cases in support of their claim that Hellmann should point to "inconsistent contemporaneous

5    statements or information (such as internal reports) that were made available to defendants"

6    to provide further detail about Pacnor's alleged failure to perform the services described in

7    the invoices.  Def. Second Motion to Dismiss, docket no. 27, at 5; In re GlenFed,

8    42 F.3d at 1547-48; Moore, 191 F.3d 531; Yourish v. California Amplifier, 191 F.3d 983

9    (9th Cir. 1999); Semegen v. Weidner, 780 F.2d 727 (9th Cir. 1986).  The cited cases,

10   however, all involved alleged misrepresentations of the value of stock and therefore required

11   contemporaneous information of their actual value to show falsity.  In contrast, the fact that

12   the invoiced services were never performed is the fact showing why the invoices were false.

13   Thus, no more is required to allege fraud with sufficient particularity.

14        Defendants also argue that the complaint fails to satisfy Rule 9(b) because "Hellmann

15   likewise fails to allege a single fact supporting its claim that the defendants knew the work

16   was never performed when the invoices were submitted."  Def. Second Motion to Dismiss,

17   docket no. 27, at 6.  Rule 9(b), however, provides that "[m]alice, intent, knowledge, and

18   other conditions of mind of a person may be averred generally."  Thus, Hellmann's general

19   averment that Defendants knew the work was never performed is sufficient to satisfy

20   Rule 9(b).[2]

21        2.    Type of Case RICO was Intended to Target

22        Congress enacted RICO "to combat organized crime, not to provide a federal cause of

23   action and treble damages to every tort plaintiff."  Oscar v. University Students Coop Ass'n,

24   965 F.2d 783, 786 (9th Cir. 1992).  Courts scrutinize RICO cases predicated on mail and wire

25

26        [2] Defendants also argue that Hellmann has failed to allege its state law claims with sufficient
     particularity.  This argument fails for the same reasons as Defendants' argument that the RICO claims
     were not plead with sufficient particularity to satisfy Fed. R. Civ. P. 9(b).

1    fraud particularly closely "because of the relative ease with which a plaintiff may mold a

2    RICO pattern from allegations that, upon further scrutiny, do not support it." Efron v.

3    Embassy Suites, Inc., 223 F.3d 12, 20 (1st Cir. 2000).  However, the Supreme Court has

4    rejected the "invitation to invent a rule that RICO's pattern of racketeering concept requires

5    an allegation and proof of an organized crime nexus."   H.J. Inc. v. Northwestern Bell Tel.

6    Co., 492 U.S. 229, 249 (1989).

7         While the cases cited by the Defendants certainly suggest that courts should scrutinize

8    RICO claims based on fraud closely, in each of the cases there was also a failure to

9    successfully allege one or more of the elements of a civil RICO claim.[3] See Oscar, 965 F.2d

10   at 787-88 (Ninth Circuit upheld dismissal of plaintiff's claim for failure to plead an injury to

11   a "business or property"); New York Auto. Ins. Plan, 1998 WL 695869, at ** 5-6, 9

12   (plaintiff's motion for summary judgment on RICO claims denied because there was no

13   evidence of a RICO "enterprise"); Katzman, 167 F.R.D. at 655-656 (RICO claims dismissed

14   for failure to plead RICO "predicate acts" and for failure to plead a pattern of racketeering

15   activity); Efron, 223 F.3d at 21 (affirming dismissal of RICO claims for failure to adequately

16   allege a RICO "pattern"); GE Inv. II, 247 F.3d at 549 (affirming dismissal of RICO claims

17   for failure to plead a pattern of racketeering activity).

18        In contrast, Hellmann has adequately alleged the elements of a civil RICO claim.

19   Defendants do not appear to contest that Hellmann has adequately alleged conduct of an

20   enterprise that caused injury to Hellmann's business.  Defendants' contention is that

21   Hellmann's allegations fail to establish a "pattern" of racketeering activity.

22        "A violation under section 1962(c) requires proof of . . . 'a pattern [] of racketeering

23   activity.'"   Howard v. America Online, Inc., 208 F.3d 741, 746 (9th Cir. 2000) (quoting

24

25        [3] "The elements of a civil RICO claim are as follows: (1) conduct (2) of an enterprise (3) through
     a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's
26   'business or property.'"  Living Designs, Inc. v. E.I. Dupont de Numours and Co., 431 F.3d 353, 361
     (9th Cir. 2005) (citation omitted).

1   Sedima S.P.R.L. v. Imrex Corp. 473 U.S. 479, 496 (1985)).  A pattern of racketeering

2   activity under RICO must be "at least two acts of racketeering activity" within ten years of

3   each other.  18 U.S.C. § 1961(5).  "Two acts are necessary, but not necessarily sufficient, for

4   finding a RICO violation."  Howard, 208 F.3d at 746 (citing H.J. Inc., 492 U.S. at 238).

5       To satisfy the continuity requirement, a plaintiff must show either a "series of related

6   predicates extending over a substantial period of time [*i.e.* closed-ended continuity]," or "past

7   conduct that by its nature projects into the future with a threat of repetition [*i.e.* open-ended

8   continuity]."  H.J., Inc. 492 U.S. at 241-42.

9       "Open-ended continuity is shown by 'past conduct that by its nature projects into the

10  future with a threat of repetition.'"  Allwaste, Inc. v. Hecht, 65 F.3d 1523, 1528 (9th Cir.

11  1995) (quoting H.J., Inc., 492 U.S. at 241-42).  "Predicate acts that specifically threaten

12  repetition or that become a 'regular way of doing business' satisfy the open-ended continuity

13  requirement."  Id.  A plaintiff can satisfy the open-ended continuity requirement by alleging

14  that the fraudulent activity would have continued had it not been interrupted by termination

15  of employment.  Id. at 1530.

16      Here, the pleadings create a strong inference that had Harris and McInerny not been

17  terminated from employment at Hellmann, Defendants' allegedly fraudulent scheme would

18  have continued.  First Amended Complaint, docket no. 23, at ¶ 16.  Hellmann alleges that

19  fraudulent invoicing had become a regular way of doing business for Defendants and was

20  interrupted only by the termination of their employment.

21      Harris conceded in his Reply for the first motion to dismiss that Hellmann has shown

22  open-ended continuity and, therefore, adequately alleged a pattern of racketeering activity.

23  Def. Reply, docket no. 17, at 9-10, n.9.  Consequently, the Court will not evaluate whether

24  Hellmann adequately alleged closed-ended continuity at this stage of the proceeding.[4]

25  _____

26      [4] Although Hellmann has alleged sufficient facts to state a claim under RICO, the Court remains
    skeptical that this dispute rises to the level of a RICO case, as RICO was intended by Congress to
    combat organized crime.  See Oscar, 965 F.2d at 786.  The Court will address this issue at the summary

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

     3.      <u>Supplemental Jurisdiction</u>

     Because Hellmann's RICO claims will not be dismissed, the Court DENIES

Defendants' request for the Court to refuse to exercise supplemental jurisdiction over the

state law claims.

## CONCLUSION

     Plaintiff has alleged the RICO and state law fraud claims with sufficient particularity

to satisfy Fed. R. Civ. P. 9(b).  Additionally, Plaintiff has adequately alleged the elements of

a civil RICO claim.  Accordingly, the Court DENIES Defendants' Second Motion to

Dismiss.

     IT IS SO ORDERED.

     DATED this 21st day of December, 2009.

Thomas S. Zilly
United States District Judge

judgment stage.  The Court notes that even if the Court dismissed the RICO claim at this time, it would
have exercised supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

ORDER  - 8