UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HELLMANN WORLDWIDE LOGISTICS, INC., <br><br> Plaintiff, <br><br> v. <br><br> BRUCE HARRIS, PHILIP MCINERNY, HALLIE ENGEL, AND PACNOR TRANSPORTATION, LLC, <br><br> Defendants. | C09-738Z <br><br> ORDER |

THIS MATTER comes before the Court on Defendants' Second Motion to Dismiss Plaintiff's RICO and State Law Claims, docket nos. 27 and 28.[1] Having reviewed all of the papers filed in support of and in opposition to the motion, the Court now DENIES Defendants' Motion to Dismiss and enters the following Order.

## BACKGROUND

Plaintiff Hellman Worldwide Logistics, Inc.'s ("Hellmann") First Amended Complaint, docket no. 23, alleges that Defendants Bruce Harris ("Harris"), Phillip McInerny ("McInerny"), and Hallie Engel ("Engel") conspired to steal funds from Hellmann. Hellmann alleges that Harris, McInerny, and Engel formed Pacnor Transportation, LLC

---

[1] Defendant Bruce Harris moved to dismiss, docket no. 27. Defendants Hallie Engel and Pacnor Transportation, LLC filed a Notice of Joinder, docket no. 28.

ORDER - 1

("Pacnor") on August 14, 2008, and from that date to December, 2008, caused Pacnor to submit invoices to Hellmann charging Hellmann for services that Pacnor never performed. First Amended Complaint at ¶¶ 9, 10.  Hellmann employed Harris as its Seattle Branch Manager and McInerny as its Seattle Branch Operations Manager during this period. Id. at ¶ 7.  Hellmann terminated both employees in December, 2008. Id. at ¶ 9.

Hellmann alleges RICO mail and wire fraud claims arising from Harris, McInerny, Engel, and Pacnor (collectively, the "Enterprise") sending fraudulent invoices by mail during the four month period between August, 2008, and December, 2008. Id. at ¶¶ 9.1-9.20. Hellmann alleges that the Enterprise "sent, via U.S. Mail, invoices to Hellmann in the name of Pacnor, charging Hellmann for its services that Pacnor never performed, for an inflated amount even if these services were performed, and with the intent to defraud Hellmann of the amounts charged." Id. at ¶ 9.  The First Amended Complaint sets forth the alleged role of each Defendant in the scheme: Harris approved Pacnor as a vendor knowing that McInerny would approve the allegedly fraudulent invoices, McInerny approved the invoices and mailed checks for payment of those invoices, and Engel received those checks as payment for the allegedly fraudulent invoices she sent. Id. at ¶ 13.  Hellmann also alleges that Harris, on more than one occasion, "sent emails to Hellmann's offices in Costa Rica in furtherance of the Enterprise's scheme to defraud Hellmann as described above, and with the intent to defraud Hellmann of the amounts charged." Id. at ¶ 10.

Hellmann also alleges three state law claims against Harris: breach of fiduciary duty, fraud, and conversion.  Hellmann alleges that the Enterprise made several false representations of material fact to Hellmann, knowing that those representations were false at the time made, and with the intent to induce Hellmann to remit monies to Pacnor in reliance on those false representations. Id. at ¶¶ 27-29.

The Court has previously dismissed Plaintiff's original Complaint with leave to amend because it failed to allege the circumstances constituting fraud with sufficient particularity to

meet the requirements of Fed. R. Civ. P. 9(b).  See Minute Order, docket no. 16.  Plaintiff has now filed the First Amended Complaint, docket no. 23.  The First Amended Complaint provides additional details about exactly which invoices and emails were alleged to have been fraudulent and when those invoices and emails were sent.  See First Amended Complaint.  Defendants have now filed their second motion to dismiss.

# DISCUSSION

## A. Motion to Dismiss

Although a complaint challenged by a Rule 12(b)(6) motion to dismiss need not provide detailed factual allegations, it must offer "more than labels and conclusions" and contain more than a "formulaic recitation of the elements of a cause of action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The complaint must indicate more than mere speculation of a right to relief.  Id.  When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court."  Id. at 558.  A complaint may be lacking for one of two reasons: (1) absence of a cognizable legal theory, or (2) insufficient facts under a cognizable legal claim.  Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).  In ruling on a motion to dismiss, the Court must assume the truth of the plaintiff's allegations and draw all reasonable inferences in the plaintiff's favor.  Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).  The question for the Court is whether the facts in the complaint sufficiently state a "plausible" ground for relief.  Twombly, 550 U.S. at 570.

Defendants' second motion to dismiss the RICO claim is based on two main arguments: (1) that the First Amended Complaint still fails to plead fraud with sufficient particularity to meet the requirements of Fed R. Civ. P. 9(b); and (2) that this is not the type of case that RICO and its severe penalties were intended to target.  Defendants also move to dismiss Plaintiff's state law fraud claim for failure to plead fraud with sufficient particularity

to meet the requirements of Fed. R. Civ. P. 9(b) and, if the Court dismisses the RICO claim, to decline to exercise supplemental jurisdiction over the state law claims.

**B.   Analysis**

    1.    <u>Requirement of Sufficient Particularity</u>

The plaintiff must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This particularity requirement applies to RICO claims predicated on fraud. <u>See</u> <u>Moore v. Kayport Package Express, Inc.</u>, 885 F.2d 531, 541 (9th Cir. 1989). To satisfy Rule 9(b), "a plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading." <u>In re GlenFed, Inc. Securities Litigation</u>, 42 F.3d 1541, 1547-48 (9th Cir. 1994). Moreover, "mere conclusory allegations of fraud are insufficient." <u>Moore</u>, 885 F.2d at 540.

Although Defendants acknowledge that Hellmann's First Amended Complaint sufficiently states the time, place, and content of the alleged misrepresentations, Defendants claim that Hellmann has still failed to adequately allege what is false or misleading about the statements and why they are false. <u>See</u> Second Motion to Dismiss at 5. Essentially, Defendants argue that Hellmann must do more than state that the work described in the invoices and emails "was not performed;" Hellmann must also state how it knows that the work was never performed.

Defendants' argument is unpersuasive. Hellmann has set forth why the alleged misrepresentations were false or misleading: because the invoiced work was never performed. Hellmann cannot be expected to provide additional details about "how" Pacnor did not perform the services stated in the invoices. Furthermore, Hellmann is not required to provide the evidentiary basis for its claim that the services were never performed at this stage

of the proceeding. See In re GlenFed, 42 F.3d at 1550 ("we do not test the evidence at this stage.").

Defendants' reliance on securities fraud cases is misplaced. Defendants cite several cases in support of their claim that Hellmann should point to "inconsistent contemporaneous statements or information (such as internal reports) that were made available to defendants" to provide further detail about Pacnor's alleged failure to perform the services described in the invoices. Def. Second Motion to Dismiss, docket no. 27, at 5; In re GlenFed, 42 F.3d at 1547-48; Moore, 191 F.3d 531; Yourish v. California Amplifier, 191 F.3d 983 (9th Cir. 1999); Semegen v. Weidner, 780 F.2d 727 (9th Cir. 1986). The cited cases, however, all involved alleged misrepresentations of the value of stock and therefore required contemporaneous information of their actual value to show falsity. In contrast, the fact that the invoiced services were never performed is the fact showing why the invoices were false. Thus, no more is required to allege fraud with sufficient particularity.

Defendants also argue that the complaint fails to satisfy Rule 9(b) because "Hellmann likewise fails to allege a single fact supporting its claim that the defendants knew the work was never performed when the invoices were submitted." Def. Second Motion to Dismiss, docket no. 27, at 6. Rule 9(b), however, provides that "[m]alice, intent, knowledge, and other conditions of mind of a person may be averred generally." Thus, Hellmann's general averment that Defendants knew the work was never performed is sufficient to satisfy Rule 9(b).[2]

2. <u>Type of Case RICO was Intended to Target</u>

Congress enacted RICO "to combat organized crime, not to provide a federal cause of action and treble damages to every tort plaintiff." Oscar v. University Students Coop Ass'n, 965 F.2d 783, 786 (9th Cir. 1992). Courts scrutinize RICO cases predicated on mail and wire

---

[2] Defendants also argue that Hellmann has failed to allege its state law claims with sufficient particularity. This argument fails for the same reasons as Defendants' argument that the RICO claims were not plead with sufficient particularity to satisfy Fed. R. Civ. P. 9(b).

ORDER - 5

fraud particularly closely "because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon further scrutiny, do not support it." Efron v. Embassy Suites, Inc., 223 F.3d 12, 20 (1st Cir. 2000). However, the Supreme Court has rejected the "invitation to invent a rule that RICO's pattern of racketeering concept requires an allegation and proof of an organized crime nexus." H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 249 (1989).

While the cases cited by the Defendants certainly suggest that courts should scrutinize RICO claims based on fraud closely, in each of the cases there was also a failure to successfully allege one or more of the elements of a civil RICO claim.[3] See Oscar, 965 F.2d at 787-88 (Ninth Circuit upheld dismissal of plaintiff's claim for failure to plead an injury to a "business or property"); New York Auto. Ins. Plan, 1998 WL 695869, at ** 5-6, 9 (plaintiff's motion for summary judgment on RICO claims denied because there was no evidence of a RICO "enterprise"); Katzman, 167 F.R.D. at 655-656 (RICO claims dismissed for failure to plead RICO "predicate acts" and for failure to plead a pattern of racketeering activity); Efron, 223 F.3d at 21 (affirming dismissal of RICO claims for failure to adequately allege a RICO "pattern"); GE Inv. II, 247 F.3d at 549 (affirming dismissal of RICO claims for failure to plead a pattern of racketeering activity).

In contrast, Hellmann has adequately alleged the elements of a civil RICO claim. Defendants do not appear to contest that Hellmann has adequately alleged conduct of an enterprise that caused injury to Hellmann's business. Defendants' contention is that Hellmann's allegations fail to establish a "pattern" of racketeering activity.

"A violation under section 1962(c) requires proof of . . . 'a pattern [] of racketeering activity.'" Howard v. America Online, Inc., 208 F.3d 741, 746 (9th Cir. 2000) (quoting

---

[3] "The elements of a civil RICO claim are as follows: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or property.'" Living Designs, Inc. v. E.I. Dupont de Numours and Co., 431 F.3d 353, 361 (9th Cir. 2005) (citation omitted).

ORDER - 6

Sedima S.P.R.L. v. Imrex Corp. 473 U.S. 479, 496 (1985)). A pattern of racketeering activity under RICO must be "at least two acts of racketeering activity" within ten years of each other. 18 U.S.C. § 1961(5). "Two acts are necessary, but not necessarily sufficient, for finding a RICO violation." Howard, 208 F.3d at 746 (citing H.J. Inc., 492 U.S. at 238).

To satisfy the continuity requirement, a plaintiff must show either a "series of related predicates extending over a substantial period of time [*i.e.* closed-ended continuity]," or "past conduct that by its nature projects into the future with a threat of repetition [*i.e.* open-ended continuity]." H.J., Inc. 492 U.S. at 241-42.

"Open-ended continuity is shown by 'past conduct that by its nature projects into the future with a threat of repetition.'" Allwaste, Inc. v. Hecht, 65 F.3d 1523, 1528 (9th Cir. 1995) (quoting H.J., Inc., 492 U.S. at 241-42). "Predicate acts that specifically threaten repetition or that become a 'regular way of doing business' satisfy the open-ended continuity requirement." Id. A plaintiff can satisfy the open-ended continuity requirement by alleging that the fraudulent activity would have continued had it not been interrupted by termination of employment. Id. at 1530.

Here, the pleadings create a strong inference that had Harris and McInerny not been terminated from employment at Hellmann, Defendants' allegedly fraudulent scheme would have continued. First Amended Complaint, docket no. 23, at ¶ 16. Hellmann alleges that fraudulent invoicing had become a regular way of doing business for Defendants and was interrupted only by the termination of their employment.

Harris conceded in his Reply for the first motion to dismiss that Hellmann has shown open-ended continuity and, therefore, adequately alleged a pattern of racketeering activity. Def. Reply, docket no. 17, at 9-10, n.9. Consequently, the Court will not evaluate whether Hellmann adequately alleged closed-ended continuity at this stage of the proceeding.[4]

---

[4] Although Hellmann has alleged sufficient facts to state a claim under RICO, the Court remains skeptical that this dispute rises to the level of a RICO case, as RICO was intended by Congress to combat organized crime. See Oscar, 965 F.2d at 786. The Court will address this issue at the summary

ORDER - 7

3. Supplemental Jurisdiction

Because Hellmann's RICO claims will not be dismissed, the Court DENIES Defendants' request for the Court to refuse to exercise supplemental jurisdiction over the state law claims.

**CONCLUSION**

Plaintiff has alleged the RICO and state law fraud claims with sufficient particularity to satisfy Fed. R. Civ. P. 9(b). Additionally, Plaintiff has adequately alleged the elements of a civil RICO claim. Accordingly, the Court DENIES Defendants' Second Motion to Dismiss.

IT IS SO ORDERED.

DATED this 21st day of December, 2009.

Thomas S. Zilly
United States District Judge

---

judgment stage. The Court notes that even if the Court dismissed the RICO claim at this time, it would have exercised supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

ORDER - 8